UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 231 |
| vs. | ) | Magistrate Judge Valdez |
| | ) | |
| SHAWNEE L. JOHNSON | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

For nearly a year, from April 9, 2006 to March 16, 2007, the defendant submitted false claims for unemployment benefits to the Railroad Retirement Board ("RRB"). For her crime, the defendant should receive a sentence within the range advised by the U.S. Sentencing Guidelines ("Guidelines") of 0 to 6 months' imprisonment. The defendant should also be ordered to pay the full amount of benefits that she improperly obtained of $10,368 to the RRB as restitution.

The Government has received and reviewed the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office for defendant. The Government has no objections to the PSR. The Government respectfully requests that the Court adopt the factual findings and Guideline calculations set forth in the PSR at the sentencing hearing on August 6, 2008, at 10 am.

## ARGUMENT

### A.     A Guideline Range Sentence Is Warranted

Section 3553(a) requires the court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing.[1]  In order to determine the "particular" sentence to impose, the court must consider the familiar statutory factors listed in § 3553(a)(1)-(7).  One of those factors is the advisory range set by the Sentencing Guidelines, and another is the Commission's policy statements.  § 3553(a)(4), (a)(5).  Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."  *Gall v. United States*, — U.S. — , 128 S. Ct. 586, 596 (2007).  For two reasons, this court should give serious consideration to the advisory Guidelines range.

First, the Sentencing Guidelines are the *sole* factor in § 3553(a) that provides any objective sentencing range that can practically promote the overall goal of minimizing unwarranted sentencing disparities, itself a statutorily-mandated factor, § 3553(a)(6).  *See United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005) ("The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country."); *see also Booker v. United States*, 543 U.S. 220, 250 (2005) ("Congress' basic statutory goal – a

---

[1]Those purposes are the need for the sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  § 3553(a)(2)(A)-(D).

system that diminishes sentencing disparity"); *id.* at 253 ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity"); *id.* at 267 (rejecting other remedial alternatives because they were inconsistent with the "basic objective of promoting uniformity in sentencing"). The Supreme Court created the advisory system to "continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individual sentences where necessary." *Booker*, 543 U.S. at 264-65. The only way to prevent widespread unwarranted disparities is to give serious consideration to the Guidelines.

Second, the Guidelines generally deserve serious consideration because they are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 128 S. Ct. at 594. It is true that there is no "presumption" that a Guidelines sentence is the "correct" sentence, *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007),[2] and that there is "broad" sentencing discretion post-*Booker*. *United States v. Demaree*, 459 F.3d 791, 794-95 (7th Cir. 2006). However, the Commission is "a respected public body with access to the best knowledge and practices of penology; its judgments should not lightly be disregarded." *United States v. Wachowiak*, 496 F.3d 744, 753 (7th Cir. 2007) (internal quotation and citation omitted). Furthermore, the

---

[2]Although the Seventh Circuit has held that Guidelines 'departures' are no longer relevant after *Booker*, it is true that the Supreme Court referred multiple times to 'departures' from the Guidelines, as a category distinct from § 3553(a) variances, in *Rita*, 127 S. Ct. at 2461, 2465, 2468 (2007). However, even after *Rita*, the Seventh Circuit has continued to express the view that departures are obsolete. *United States v. Dale*, 498 F.3d 604, 611 n.6 (7th Cir. 2007).

Commission is charged by statute to periodically review and revise the Guidelines as the Commission collects comments and data from numerous sources in the criminal justice system, 28 U.S.C. § 994(o), and these ongoing efforts to refine the Guidelines are another reason to seriously consider the advisory range.

In the event that this court exercises its discretion to sentence outside the advisory range, there are guideposts for evaluating what the extent of the deviation should be and when a non-Guidelines sentence will be deemed unreasonable on appeal. These guideposts are set forth in Supreme Court and Seventh Circuit cases.

First, the Supreme Court instructs that it is "clear that a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Gall*, 128 S. Ct. at 594. The degree of the deviation from the advisory Guidelines range is relevant in choosing the particular sentence:

> If [the judge] decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one.

*Id.* at 597. In *Gall*, the Supreme Court affirmed a sentence of probation in an Ecstasy conspiracy case where the low-end of the range was 30 months of imprisonment. Although the Court acknowledged the qualitative difference between probation and a sentence of imprisonment, the defendant presented extensive mitigating facts: his role in the crime was to deliver drugs to other co-conspirators; he had voluntarily stopped distributing drugs "after

4

deciding, on his own initiative, to change his life," which distinguished him from the "vast majority of defendants convicted of conspiracy"; after withdrawing from the drug conspiracy, he graduated from college and obtained steady employment; when confronted by law enforcement agents, he fully confessed to the crime; when indicted, he moved back to the district in which he was charged and started his own successful business; and he proffered a "small flood" of letters praising his character and work ethic. *Id.* at 591-93, 599-600.

In contrast to the significant and uniquely-personal mitigating facts in *Gall*, the Seventh Circuit warns that major deviations from the advisory range are more likely to be unreasonable if the grounds for the deviation are "overstated mitigating factors" or "normal incidents" of the offense. *Wachowiak*, 496 F.3d at 754. Similarly, the Seventh Circuit admonishes that sentences relying on "common" factors, rather than "particularized" ones, to justify variances are less likely to be substantively reasonable. *Id.* at 750. To be sure, these are only guides and not bright-line rules for assessing reasonableness, but they are helpful in preventing excessive sentencing disparities. As the Government explains below, a sentence within the advisory range is appropriate in this case because the § 3553(a) factors weigh in favor of such a sentence.

1.    **The Guideline range adequately reflects the nature and circumstances of the offense, and the history and characteristics of the defendant.**

The nature and circumstances of the defendant's theft from the government are straightforward and serious. On or around March 3, 2006, the defendant was laid off from her job with Amtrak. By virtue of her employment with Amtrak, defendant was eligible to receive unemployment benefit from the RRB while she was not employed. On or around April 3, 2006, the defendant started at a new job working for a Chicago-area company. The defendant then, from April 9, 2006, to March 16, 2007, proceeded to falsely submit 21 claim for benefit forms to the RRB for benefits. Each claim form submitted by the defendant was a separate, intentional decision to take from the government something that did not belong to the defendant and to which defendant had no right. In total, defendant deprived the RRB of $10,368 in benefit funds.

The defendant's attempt to justify to the probation officer why she submitted the false claims speak volumes about the characteristics of the defendant that enabled her to commit the crime. According to the PSR, the defendant stated that she did not know that it was illegal to receive unemployment benefits while she was employed and that someone at the RRB told her that she could receive unemployment benefits as long as her salary was below a certain threshold. *See* PSR at 2, lines 33 to 35.

The defendant's statements contradict her admissions in the plea agreement, the evidence and common sense. In her plea agreement, defendant admitted that, in connection with her application for benefits, defendant understood that she must be unemployed to

receive unemployment insurance benefits.  *See* Plea Agrmt at 2.  The defendant also knew that it was illegal to submit false claims for benefits because she certified on each claim benefit form that she knew that "criminal penalties may be imposed on me for false or fraudulent statements or claims or for withholding information to get benefits." *See* attached Exhibit – Claim for Unemployment Benefits.

The defendant's statements demonstrate that the defendant is willing to rationalize away her misguided actions to herself and to others.[3]  Given the serious nature of the offense that the defendant committed, a Guidelines range sentence of 0 to 6 months' imprisonment is necessary to impress upon the defendant the gravity of her misconduct.

> **2.      The applicable Guideline range adequately and appropriately reflects the need for the sentence imposed to reflect the seriousness of the offense, affords adequate deterrence and protect the public from the further crimes of the defendant.**

The defendant's theft of Government benefits is a serious offense, and warrants an appropriate penalty.  Sentencing the defendant to the Guideline range term of imprisonment of 0 to 6 months is, under the circumstances, a penalty that is sufficient, but not greater than necessary, to reflect the gravity of her crime.

A Guidelines ranges sentence is also appropriate to deter the defendant from committing future crimes.  As the PSR reveals, the defendant is prone to rationalize her actions.   As such, a Guidelines range penalty is necessary to deter defendant from

---

[3]The Government does not take the position that the defendant is ineligible for an adjustment for acceptance of responsibility pursuant to Guideline §3E1.1(a) because the defendant continues to admit that she committed the offense to which she pled guilty.  *See* PSR at 3, line 36.

committing future crimes. Such a sentence also serves the important goal of protecting the public from any further crimes of the defendant.

**B.    The Defendant Should Be Ordered To Pay Restitution of $10,368.**

A district court must order restitution in the full amount of the loss. 18 U.S.C. §§ 3663A(b), 3664(f)(1)(A). Accordingly, the Court should order the defendant to pay restitution to the RRB of $10,368. This amount represents the full amount that defendant obtained by submitting false claims for unemployment benefits to the RRB.

Pursuant to the Seventh Circuit's recent decision in *United States v. Sawyer*, 521 F.3d 792, 795 (7th Cir. 2008), the Court should order that all of the defendant's "non-exempt" assets as of the date of sentencing be turned over to be applied toward restitution. The Government requests that the Court include the following language in the Order of Judgment and Commitment:

> The defendant must immediately turn over her non-exempt assets, if any, to be applied toward restitution. After any term of imprisonment, 25% of defendant's future monthly disposable income will be paid toward restitution. Under 18 U.S.C. § 3664(k), defendant must notify the court and the Attorney General of any material change in the defendant's ability to pay restitution.

## <u>CONCLUSION</u>

The Government respectfully requests that the Court should impose a sentence within the 0 to 6 month range advised by the U.S. Sentencing Guidelines, and order the defendant to pay full restitution to the RRB of $10,368.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By:  /s/ Kenneth E. Yeadon
KENNETH E. YEADON
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5326

Dated:  July 3, 2008

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that the following document:

Government's Sentencing Memorandum

was served on July 3, 2008, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s/ Kenneth E. Yeadon
KENNETH E. YEADON
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois
(312) 353-5326

# Government Exhibit

# --

# Claim for Unemployment Benefits

RAILROAD RETIREMENT BOARD                                          FORM APPROVED O.M.B. 3220-0022

# CLAIM FOR UNEMPLOYMENT BENEFITS

S JOHNSON

**1.a.** This claim is for unemployment benefits for the 14 consecutive days shown below. To claim benefits, mark the box under each date with the appropriate code (X, E, P, or O).

X–Claimed day of unemployment (including rest days); E–Day employed; P–Vacation or holiday pay; O–Day not claimed, other reason

This claim is for
**03-25-06 THROUGH 04-07-06**
Mark each box with X, E, P, or O.

| 25 | 26 | 27 | 28 | 29 | 30 | 31 | 01 | 02 | 03 | 04 | 05 | 06 | 07 |
|----|----|----|----|----|----|----|----|----|----|----|----|----|----|
| X | X | X | X | X | X | X | X | X | X | X | X | X | X |

**b.** Enter the gross amount of wages and/or other pay (before deductions) that you received or will be paid for days in this period. Do not include RRB benefits or payments received under a supplemental unemployment benefit plan. **This item must be completed if you entered "E" or "P" for any day in item 1a.**

$ 0

**2. a.** Name of last railroad employer

*Laurel Johnson*

**b.** Last railroad job (show job title, e.g. clerk, trainman, etc.)

*Trackman*

**c.** Reason you are not working (check one box):
- [ ] 3. Sick or Injured
- [ ] 4. Quit or Resigned
- [ ] 7. Suspended
- [ ] 8. Strike/Work Stoppage
- [ ] 1. Laid off
- [ ] 5. Retired
- [ ] 2. Extra Board/Part-time
- [ ] 6. Discharged
- [X] 9. Other (Explain Below)

Explanation: *Furlow – AmTrak*

**3.** Return your claim to the address below.

RAILROAD RETIREMENT BOARD
844 N RUSH ST
9TH FLOOR
CHICAGO IL 60611-2092

Received
APR 11 2006
Chicago District Office

**4.** If your name or address is not correct, print changes below.

S L JOHNSON

Form UI–3 (10–04)                                          CONTINUE ON BACK

---

**5. a.** Have you worked for a nonrailroad employer since your last day of railroad work?
- [ ] Yes – Complete Items b–d, below    [X] No – Go to Item 6

**b.** Enter employer name and address *Amtrak 825 W VanBuren*

**c.** Enter date last worked before this claim *March 3rd*    **d.** Enter your reason for not working *Furlow*

**6. a.** Did you work in train and engine service or passenger service during this period?
- [ ] Yes – Complete Items b–c, below    [X] No – Go to Item 7

**b.** Enter the miles or hours worked during this 14-day claim period. Include miles or hours earned for regular pay, premium pay, overtime and deadheading.    Miles: _____    Hours: _____

**c.** Enter the dates in this period on which you did not work because of a layover or stand-by rule, mileage restriction, or because you missed a turn in pool service

**7.** Complete a–f by placing an "X" in the "YES" or "NO" box. If you "X" a box marked with an (∗), explain your answer below.

| | YES | NO |
|---|---|---|
| a. Did you work on any day claimed for any person or company or were you self-employed? | ∗ [ ] | [X] |
| b. Were you sick or injured on any day claimed? | ∗ [ ] | [X] |
| c. Were you ready and willing to work on all days claimed? | [X] | ∗ [ ] |
| d. Have you quit, resigned or refused any work since you last claimed benefits? | ∗ [ ] | [X] |
| e. Have you been paid a separation allowance by any employer since you last claimed benefits? | ∗ [ ] | [X] |
| f. Are you getting any income such as military reservist pay, vacation or holiday pay, pay for time lost, railroad guarantee pay, state unemployment benefits, social security benefits, military or other retirement benefits? | ∗ [ ] | [X] |

∗Explanation:

**8. CERTIFICATION:** I certify that I have read Booklet UB-10 and understand it. I know that disqualifications and civil and criminal penalties may be imposed on me for false or fraudulent statements or claims or for withholding information to get benefits. The information given on this form is true, correct, and complete.

**DO NOT SIGN, DATE, OR MAIL THIS CLAIM BEFORE THE LAST DAY OF THIS CLAIM PERIOD.**

*Laurel Johnson*          *4-9-06*

Signature                        Date                        Telephone Number